STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-0865


DIANA LEIGH BREECE YOUNG

VERSUS

TRAVIS SCOTT YOUNG


\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT,
PARISH OF RAPIDES, NO. 222,838A
HONORABLE DONALD T. JOHNSON, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

JIMMIE C. PETERS
JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Marc T. Amy, and James T. Genovese, Judges.


**AFFIRMED.**

**Gregory N. Wampler**
**Lemoine & Wampler**
**607 Main Street**
**Pineville, LA 71360**
**(318) 473-4220**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Diana Leigh Breece Young**

**Travis Scott Young**
**50 Perry Road**
**Forest Hill, LA 71430**
**(318) 748-6443**
**DEFENDANT/APPELLANT IN PROPER PERSON**

PETERS, J.

Travis Scott Young appeals the trial court's denial of his motion to modify a child custody judgment by amendment to a protective order issued pursuant to La.R.S. 46:2136. For the following reasons, we affirm the trial court's denial of his motion.

## DISCUSSION OF THE RECORD

Travis Scott Young (Travis) and Diana Leigh Breech Young (Diana) were formerly husband and wife, having been married on May 15, 2001, and divorced on December 11, 2006. One child was born of this marriage: Tanner Scott Young, who was born on September 19, 2002.

Diana began the divorce proceedings by a petition filed on December 8, 2005, and custody was first addressed by a consent decree executed by the trial court on March 13, 2006. In that decree, the parties were awarded joint custody with Diana being named as the primary domiciliary custodial parent. A stipulated judgment executed by the trial court on April 17, 2007, modified Travis' communication and visitation schedule with the child, but otherwise maintained the custody arrangements of the March 13, 2006 decree.

The record before us reflects that the dissolution of the marriage and the ramifications thereof have been contentious. Hearings on a multitude of issues were conducted by the trial court on January 7 and January 28, 2008. This hearing resulted in the trial court issuing written reasons for judgment on February 1, 2008, wherein it denied Diana's request to relocate with her son to the State of Washington, maintained joint custody between the parties, and continued in place a protective order that had been issued in favor of Diana and against her former husband. The trial court's factual findings were as follows:

- That the plaintiff and defendant have a tumultuous relationship;
- That the tumultuous relationship of the parents has caused, if not aggravated, the ADHD diagnosis of their minor child;
- That during the defendant's scheduled phone conversations with the minor child, the child frequently does not want to talk on the phone and conversations are usually terminated prematurely;
- That the defendant has harassed the plaintiff, her co-workers, and various medical professionals who have the minor child as a client/patient;
- That, although there have been allegations of physical abuse, there is no evidence of the defendant physically abusing the plaintiff;
- That although the defendant was behind in his child support payments in the past, he currently fulfills all of his financial obligations;
- That the plaintiff would take a lower-paying job, at least initially, if she relocated to Washington;
- That the limited income of the defendant would probably not afford him the opportunity to make frequent visits to Washington; and
- That the minor child has resided in Rapides Parish his whole life.

The court-ordered protective order prohibited Travis from:

- Abusing, harassing, stalking, following, or threatening the plaintiff in any manner whatsoever;
- Contacting the plaintiff or any of her co-workers personally, electronically, by phone, in writing, or through a third party, without the express written permission of this Court;
- Going within one hundred (100) yards of the plaintiff's residence, apartment complex, or multiple family dwelling; and
- Contacting the plaintiff's employer or appearing at the spouse's place of employment.

The trial court executed a written judgment consistent with the reasons for judgment on the same day, February 1, 2008.

Eleven days later, on February 12, 2008, Travis sought and obtained his own protective order. In his petition for the protective order, he asserted that on the day before, Diana had attempted to run over him with an automobile. A hearing officer for the trial court granted him a protective order to be effective through March 7, 2008, wherein the hearing officer ordered that Diana not do the same things to Travis

2

that he had been ordered not to do to her. The hearing officer set a hearing date on the protective order for February 22, 2008.

After the February 22 hearing, the hearing officer issued a recommendation that a twelve-month protective order in the substance and form of the temporary protective order be issued against Diana and in Travis' favor based on its finding that "[Diana] roared engine & attempted to run over [Travis]." Although the record contains a copy of a protective order in the form and substance recommended by the hearing officer, the order in the record has never been executed by a judge of the trial court. Instead, Diana appealed the hearing officer's recommendation by a pleading filed February 26, 2008.

A hearing on Diana's appeal was set for February 29, 2008, but was continued to March 7, 2008. On that date, the trial court executed a protective order in Travis' favor which extended through March 7, 2009. Five days later, on March 12, 2008, Travis filed a motion to modify the protective order, and in doing so, sought an *ex parte* order awarding him temporary sole custody pending a hearing; terminating his child support obligation; prohibiting Diana from giving the child Schedule Two narcotics; prohibiting Diana from interfering with his custody in any way, including, specifically, by removing the child from the jurisdiction of the court; and requiring that Diana pay costs of court. He further prayed that a hearing be held to make the *ex parte* order permanent; to require that Diana pay him child support and provide health insurance on the child; to have Diana held in contempt of court for "failing to foster a healthy relationship between [him] and the minor child;" to require that Diana enroll in a treatment program; to have Diana pay for damages he sustained when she attempted to run over him; to require that Diana provide a separate bedroom for the

3

child when he is in her custody; and to require that she not have overnight male guests when the child is in her care.

The trial court disposed of the motion by writing across the attached order "Motion Denied." Travis' motion for reconsideration met the same fate, "Motion to Reconsider Denied." By a pleading filed April 16, 2008, Travis appealed the trial court's denial of his motion to amend the protective order, and by an order dated April 18, 2008, the trial court granted Travis his appeal. In his appeal, Travis argues that the trial court erred in not setting a hearing on his motion to modify the protective order.

**OPINION**

The authority for the grant of a protective order is found in Part II of Title 46 of the Louisiana Revised Statutes, entitled "**DOMESTIC ABUSE ASSISTANCE.**" The statutory purpose for this Part is stated in La.R.S. 46:2131 as follows:

> The purpose of this Part is to recognize and address the complex legal and social problems created by domestic violence. The legislature finds that existing laws which regulate the dissolution of marriage do not adequately address problems of protecting and assisting the victims of domestic abuse. The legislature further finds that previous societal attitudes have been reflected in the policies and practices of law enforcement agencies and prosecutors which have resulted in different treatment of crimes occurring between family or household members and those occurring between strangers. It is the intent of the legislature *to provide a civil remedy for domestic violence* which will afford the victim immediate and easily accessible protection. Furthermore, it is the intent of the legislature that the official response of law enforcement agencies to cases of domestic violence shall stress the enforcement of laws to protect the victim and shall communicate the attitude that violent behavior is not excused or tolerated.

(Emphasis added).

Given this specific purpose, the remaining provisions of this Part must be interpreted with this purpose in mind. The "domestic abuse" prevented by this Part

4

"includes but is not limited to physical or sexual abuse and any offense against the person as defined in the Criminal Code of Louisiana, except negligent injury and defamation, committed by one family or household member against another." La.R.S. 42:2132(3). Louisiana Revised Statutes 42:2134(A)(1) sets forth the requirements of a petition for relief under this part and requires, among other things, that it identify the "individual alleged to have committed abuse."

With regard to the issuance of protective orders, La.R.S. 46:2136(A) reads in pertinent part:

> A. The court may grant any protective order or approve any consent agreement to bring about a cessation of abuse of a party, any minor children, or any person alleged to be incompetent, which relief may include but is not limited to:
>
> (1) Granting the relief enumerated in R.S. 46:2135.
> . . . .
> (3) Awarding temporary custody of or establishing temporary visitation rights and conditions with regard to any minor children or person alleged to be incompetent.
> . . . .

The reference in La.R.S. 46:2136(A)(1) is to the trial court's authority to enter an *ex parte* order of relief in various respects, including "temporary custody of minor children or persons alleged to be incompetent" La.R.S. 46:2135(A)(5). Additionally, La.R.S. 46:2136(D) provides that "[o]n the motion of any party, the court, after notice to the other parties and a hearing, may modify a prior order to exclude any item included in the prior order, or to include any item that could have been included in the prior order."[1]

In the case before us, Travis' original prayer for relief was directed at Diana's abuse toward him—his assertion that she tried to run over him with an automobile.

---

[1]Travis has raised other issues which either arose after the appeal was granted or which are not in the trial record. We cannot and will not consider those issues in this appeal.

In his motion to modify the protective order, Travis asserted a number of things that do not constitute abuse[2] and cannot be used as a basis for modification of his prior protective order. Thus, the trial court did not err in denying Travis a hearing on those assertions.

The closest Travis comes to stating a basis for relief under Title 46 is the statement, in the midst of all the other allegations, to the effect that Diana "has allowed her live in boyfriend to physically abuse the minor child." However, this one assertion constitutes little more than a footnote in the overall allegations of the petition and does not comply with the mandate of La.R.S. 46:2134(A)(2), which requires that the petition for relief assert something more than a mere allegation of abuse—it requires that the petition set forth "[t]he facts and circumstances concerning the alleged abuse."

We find that the trial court did not abuse its discretion in rejecting Travis' motion without a hearing. Thus, we find no merit in this appeal.

## DISPOSITION

For the foregoing reasons, we affirm the trial court's denial, without a hearing, of the motion by Travis Scott Young to amend his previously issued protective order. We assess all costs of this appeal to Travis Scott Young.

**AFFIRMED.**

---

[2]Travis asserted that Diana was unwilling to cooperate with him concerning the particulars of the joint custody decree; that she interfered with his telephone calls to his son; that she failed to send social and medical updates concerning the minor child to him; and that she allowed her live-in boyfriend to speak disparagingly of him in front of the minor child; that the child has had trouble in school because of Diana's inability to cope with his particular problems; that Diana is giving the child prescription drugs which, although prescribed by a physician, have dangerous side effects; and that Diana has not provided suitable living arrangements for the minor child.